United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Nodus International Bank, Inc., Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-23112-Civ-Scola ) |
| Francisco Arocha Hernandez, and others, Defendants. | ) ) ) |

### Order Granting in Part and Denying in Part Motion to Dismiss

This matter is before the Court upon the motion filed by Francisco Arocha Hernandez ("Arocha") and 5711 Miami Beach, LLC ("5711," and, together with Arocha, "Defendants") to dismiss Plaintiff Nodus International Bank, Inc.'s ("Nodus Bank") complaint. (Compl. ("complaint"), ECF No. 1; Defs.' Mot., ECF No. 20.) This case arises from Arocha's purported failure to make good on a promissory note (the "Note") that was allegedly transferred to Nodus Bank. Nodus Bank alleges that Arocha breached the Note by failing to repay it, that Arocha committed fraud in connection with the making of the Note, and that Arocha and 5711 together fraudulently transferred an asset to hinder Nodus Bank's ability to collect on the Note. The Defendants argue that the complaint must be dismissed because Nodus Bank lacks standing to enforce the Note or otherwise recover on the loan, and because Nodus failed to plead fraud with particularity. Having reviewed the motion, the record, and the relevant legal authorities, the Court **grants in part** and **denies in part** the motion to dismiss (**ECF No. 20**).

### 1. Background and Facts[1]

On or about April 17, 2018, Arocha filed a loan application with non-party Nodus Finance, LLC ("Nodus Finance"), a Florida limited liability company. (ECF No. 1-2 at 2.) As part of the loan application, Arocha provided a financial statement of his assets as of February 2018, wherein he represented that he had total assets of $69,650,472 and a net worth of $39,100,472. (ECF No. 1-1 at 13.) Arocha also provided a letter from the human resources manager of HES Management and Services, LLC, advising that Arocha was its CEO/Managing

---

[1] The Court accepts the Plaintiff's factual allegations as true for the purposes of evaluating the Defendants' motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Partner with an annual salary of $600,000. (ECF No. 1 at ¶8.) Nodus Finance relied upon these representations and, on or about May 2, 2018, Arocha executed and delivered to Nodus Finance a Note in the principal amount of $1,500,000. On the same day, the Note was sold to Nodus Bank via a Loan and Purchase Agreement. (*Id.* at ¶9 (citing ECF No. 1-3).) The complaint alleges that "[t]he owner and holder of the Note from that moment forward was Nodus Bank," although the Defendants dispute the validity of the transfer of the Note from Nodus Financial to Defendant Nodus Bank. (*Id.* at ¶10.) With respect to assignments and transfers, the Note provides that:

> The holder of this Note may at its sole discretion, freely assign or transfer this Note and may deliver all or any of the property then held as collateral security therefore to the transferee(s) who shall thereupon become vested with all the powers and rights above given to the holder in respect thereto and the holder and any mesne transferee shall thereafter be forever relieved and fully discharged from any liability in relation thereto.

(ECF No. 1-2 at 4.)

The financial terms of the Note are straightforward. It provides for payment of interest at the annual rate of 9.25%, or $11,562.50 per month, until the maturity date of May 2, 2019. (*Id.* at ¶11.) The Note also provides for a post-default interest rate of 18% per annum. (*Id.* at ¶12.) As security for the Note, Arocha pledged and endorsed a Certificate (ECF No. 1-4) for 100% of the shares in Codazzi Investments, LLC and "all assets of Debtor [identified as Arocha], including but not limited to those listed on the [attached] schedule" pursuant to a UCC-1 Financing Statement (the "Financing Statement") (ECF No. 1-5). The Financing Statement for the Security and the Note was registered with the State of Florida on or about July 9, 2018. (ECF No. 1 at ¶14.) The schedule attached to the Financing Statement pledges as collateral all assets of Arocha, "real and personal, tangible and intangible" (ECF No. 1-5 at ¶(r)), including "all proceeds of Collateral of every kind and nature in whatever form, including, without limitation, both cash and non-cash proceeds resulting or arising from . . . the sale or disposition by [Arocha] of . . . other Collateral" (*id.* at ¶(k)). Although on its face the Note matured on May 2, 2019, the maturity date was extended to December 23, 2019, and the loan amount was reduced to $1,350,000 after the parties executed a Modification Agreement to the Note (the "Modification Agreement") on October 2, 2019. (ECF No. 1-6; ECF No. 1 at ¶17.) The Court notes that the Modification Agreement attached to the complaint is in Spanish and Nodus Bank failed to submit any English translation of that document.

Prior to the execution of the Modification Agreement, Arocha provided a financial disclosure dated as of June 30, 2019 through his accountant to Nodus Finance. (ECF No. 1 at ¶18; ECF No. 1-7.) The financial disclosure valued Arocha's assets in excess of $52,000,000, which included his 100% ownership interests in:

a. Codazzi, Global Group Ltd., which holds a 100% interest in HES Group Holding, LLC. HES, in turn, has an interest in various companies valued over $19,000,000.

b. 5711 Pinetree Drive, LLC (also known as 5711 Miami Beach, LLC), which owned a 100% interest in residential real estate in Miami Beach, Florida with a net market value of $12,000,000 as of June 30, 2019. The mortgage on the property was alleged to be $5,350,000.

c. 6301 La Gorce, LLC, which owns 100% interest in residential real estate in Miami Beach, Florida with a net market value, as of June 30, 2019, of $11,000,000. The mortgage on the property was alleged to be $6,100,000.

(*Id.*) The complaint goes on to allege that "Arocha fraudulently presented the status of his financial condition to induce Nodus Bank to execute the Modification Agreement, thus buying Arocha time to fraudulently transfer collateral without paying his obligation under the Note." (ECF No. 1 at ¶19.) Nodus Bank suggests that Arocha continually kicked the can down the road by repeatedly requesting extensions of time to make payments on the Note. For example, in a WhatsApp exchange, Arocha stated that he was in the process of closing on the sale of one of his houses, which would provide him "liquidity." (*Id.* at ¶21.) Nodus Bank "believed that, if either of the properties owned by Arocha in Miami Beach sold, given that each had a mortgage of approximately half the purported value, that the Note would be paid." (*Id.*) On or about April 24, 2020, 5711 Miami Beach, LLC sold the property located at 5711 Pine Tree Drive, Miami Beach, Florida, 33140 at a "fire-sale-price" of $7,000,000, which is significantly less than the $12,000,000 value as of June 30, 2019 that was reported in Arocha's Financial Disclosure in support of the Modification Agreement nearly one year earlier. (*Id.* at ¶22.) None of the funds from the sale were used by Arocha to pay his obligation under the Note, despite Arocha's pledge of all of his assets, including all real estate and all proceeds from the sale of real estate, to pay the Note. (*Id.*) On June 19, 2020, shortly before the commencement of the instant action, Nodus Bank sent Arocha a demand for payment of $1,369.595.53 in unpaid principal and $33,469.51 in unpaid

interest under the Note/Modification Agreement. (*Id.* at ¶24.) No amounts owed on the Note have been paid.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

In its simplest form, this case is about a loan that went bad. The Defendants raise three issues in support of their motion to dismiss. First, the parties dispute the validity of a transfer from Nodus Finance to Nodus Bank of the promissory note that memorialized the loan. Second, the Defendants argue

that Nodus Bank lacks standing to enforce a security instrument. Third, the Defendants argue that Nodus Bank failed to adequately plead its fraud claim. The Court will address each issue in turn.

### a. Transfer of the Note

The motion to dismiss argues that Nodus Bank lacks standing to sue on the Note because the transfer of the Note from Nodus Finance to Nodus Bank was invalid. The Defendants' first argument is that the complaint fails to attach any note that was purportedly sold or transferred to Nodus Bank via the Loan Purchase Agreement between Nodus Bank and Nodus Finance. (ECF No. 20 at 3.) Instead of attaching the Note, the Loan Purchase Agreement only attached two schedules—one of which is blank and the other, Schedule 1B, "only identifies the principal loan amount, purchase price, and a settlement date—no other identifying characteristics show that the loan that was sold to Nodus Bank PR was *this* loan." (*Id.* (emphasis in original).)

However, when the Loan Purchase Agreement is read in connection with the remainder of the complaint's allegations and the attachments to the complaint (including the Note itself), construed in the light most favorable to the Plaintiff, it is clear that Nodus Bank has adequately pled that the Loan Purchase Agreement transferred *this* Note from Nodus Finance to Nodus Bank. First, the Loan Purchase Agreement reflects that Nodus Finance, the original holder of the Note made by Arocha, sold loans to Nodus Bank. (ECF No. 1-3 at 2.) Second, Schedule 1B of the Loan Purchase Agreement identifies the principal loan amount and creation date of the transferred loan, which match the amount and date set forth on the Note. (*Id.* at 19.) Third, the complaint alleges the loan transferred by the Loan Purchase Agreement is in fact the Note signed by Arocha. (ECF No. 1 at ¶10.) When taken together, these three factors adequately allege that the Note was transferred from Nodus Finance to Nodus Bank via the Loan Purchase Agreement. However, the Court also notes that it will not credit Nodus Bank's reliance on the Modification Agreement, which is completely in Spanish and was not accompanied by an English translation. (ECF No. 1-6.)

The Defendants next argue, without any citation to legal authorities, that Nodus Bank lacks standing to enforce the Note because it "does not contain an indorsement to plaintiff" and because "plaintiff has failed to allege it has physical possession of the original note." (ECF No. 20 at 3.) The Court disagrees for three reasons. First, in *Jelic v. LaSalle Bank, National Association*, the court held that a plaintiff who is not the original lender (such as Nodus Bank) may nevertheless establish standing to foreclose a loan, if not "by submitting a note with a blank or special endorsement," then by submitting "an *assignment* of the note." 160 So. 3d 127, 129 (Fla. 4th DCA 2015) (emphasis added). The Defendants respond

to the Plaintiff's reliance on *Jelic* only by reiterating their position that the Plaintiff did not adequately allege an assignment. However, the Court has already held that the Plaintiff adequately alleged that the Note was assigned from Nodus Finance to Nodus Bank via the Loan Purchase Agreement. Accordingly, the second method of establishing standing to foreclose a loan as set forth in *Jelic* (*i.e.*, alleging a valid assignment) is satisfied.

Second, the Court agrees with Nodus Bank that the complaint "adequately gives Defendants fair notice of the fact that Nodus Bank is the party 'in possession of' the Note by virtue of the pleading's general averment that Nodus Bank has been the 'holder of the Note' since acquiring it through a loan purchase transaction in May of 2018." (ECF No. 23 at 7 (quoting ECF No. 1 at ¶10).) The Defendants, by contrast, do not respond to this argument in their reply brief and they appear to have abandoned their position that a party must affirmatively allege "physical possession of the original note" in addition to alleging that they are the owner and "holder of the Note."

Third, the Court is not persuaded by the Defendants' argument that Nodus Bank lacks standing because it "failed to allege compliance with Florida Statute section 201.08, which requires payment of documentary stamp taxes on promissory notes." (ECF No. 20 at 3.) In support of that argument, the Defendants cite to *Suntrust Bank v. Hamway*, where the court did indeed hold that payment of the stamp tax is a precondition to enforcement of a transferred note. No. 09-61323-CIV, 2010 WL 146858 (S.D. Fla. Jan. 11, 2010) (Altonaga, J.). However, *Suntrust Bank* actually supports the Plaintiff because, in that case, the court found that the stamp tax requirement was satisfied—*for pleading purposes only*—by the plaintiff's allegation that "all conditions precedent to the institution and maintenance of this action have been performed, waived or excused." *Id.* at *5. Plaintiff Nodus Bank has made an almost identical allegation here. (ECF No. 1 at ¶27 ("All conditions precedent to bringing this lawsuit have been performed, excused, and/or waived.").) Accordingly, Nodus Bank has adequately pled compliance with the stamp tax requirement.

### b. Standing to Enforce the Security Interest

In the motion to dismiss, the Defendants argue that Nodus Bank lacks standing to enforce a UCC-1 Financing Statement, attached as Exhibit E to the complaint, for two reasons. (ECF No. 20 at 4 (citing ECF No. 1-5).) First, the Defendants argue, without citing any legal authority, that Nodus Bank cannot enforce the security agreement because it is not named as the secured party on the UCC-1 Financing Statement; rather, Nodus Finance is identified as the secured party. The crux of the Defendants' argument is that the "Plaintiff has

failed to allege the existence of an assignment or amendment of the UCC-1 that would give it the rights of a 'secured party' under Florida Law." (ECF No. 20 at 4.) The Court disagrees. The Note contains a security agreement in favor of the original holder/payee, Nodus Finance. (ECF No. 1-2 (authorizing holder to, "at its sole discretion, freely assign or transfer this Note and may deliver all or any of the property then held as collateral security therefore to the transferee(s) who shall thereupon become vested with all the powers and rights above given to the holder in respect thereto . . . .").) Again, the Court has already held that the Note, coupled with the rights thereunder, was adequately pled to have been transferred to Nodus Bank. Accordingly, Nodus Bank qualifies as the present "secured party" under the Florida UCC, as it is the "person to whom . . . [the subject] promissory note[] ha[s] been sold." § 679.1021(1)(ttt)4, Fla. Stat. (2019). The Defendants' reply does not acknowledge, much less challenge, Nodus Bank's reliance upon Section 679.1021(1)(ttt)4 for the proposition that the transfer of the Note also transferred the security interest to Nodus Bank. Similarly, while the Defendants claim that Arocha "did not consent to or authorize" the filing (or transfer) of the UCC-1, the Defendants cite no authority for their claim that Arocha's creditors required any consent or authorization apart from that which was contained in the Note itself. (ECF No. 20 at 4.)

     Second, even if Arocha's creditors needed his authorization to file or transfer the UCC-1, the Court agrees with Nodus Bank that the complaint adequately alleges that Arocha did indeed authorize the filing and transfer of the UCC-1. The complaint alleges that Defendant Arocha "executed and delivered to Nodus Finance, LLC [the subject] Note" which, on its face, contains various terms concerning the "collateral security for the payment of this note." (ECF No. 1 at ¶9; ECF No. 1-2 at 2.) Such conduct signifies Arocha's intention of creating a security agreement in favor of the original holder/payee, in exchange for the loan evidenced by the Note. Additionally, the Note signed by Arocha refers to him "as a debtor by [the] security agreement." (*Id.*) Section 679.509(1)(a) of the Florida UCC authorizes a person to file an initial financing statement if "[t]he debtor authorizes the filing in an authenticated record *or pursuant to subsection (2) or subsection (3)[.]*" § 679.509(1)(a), Fla. Stat. (2019) (emphasis added). Subsection (2) of the statute states: "By authenticating or becoming bound as a debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial statement . . . ." § 679.509(2), Fla. Stat. (2019). In the Defendants' reply, they do not substantively dispute (*i.e.*, with reference to legal authority) Nodus Bank's argument that Arocha did indeed authorize the filing of the UCC-1. Instead, the Defendants argue that the UCC-1 filed by Nodus Finance and transferred to Nodus Bank encumbers more categories of assets than the assets permitted to be encumbered by the Note. However, the Defendants' argument

that the UCC-1 is *overbroad* does not mean that the UCC-1 is *invalid*. Arguments about the scope of the UCC-1 are better reserved for later stages of this action, where the security interest might be reduced to judgment; in the meantime, however, Nodus Bank has adequately alleged that it has an enforceable security interest.

### c. Count III—Fraud Claim

The Defendants argue that Nodus Bank lacks standing to bring its fraud claim and that the complaint fails to adequately allege fraud with the required particularity. As an initial matter, the Court rejects the Defendants' standing argument, which is a rehash of their argument that Nodus Bank lacks standing to bring claims based on the Note originally held by Nodus Finance. (ECF No. 20 at 6.) However, the Court agrees with the Defendants' argument that the fraud claims are based on unactionable promises of future action.

In *Mejia v. Jurich*, Florida's Third District Court of Appeal held that "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). *Mejia* also noted an exception to the rule, which applies "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform . . . ." *Id.* (citation omitted). In short, a promise of future action cannot be the basis of a fraud claim unless the promisor lacks the intent to make good on that promise at the time the promise is made. Thus, in *Mejia,* the court held that the defendant's promise to take a particular action in the future could serve as the basis of a fraud claim where the plaintiffs "alleged that when the representations were made . . . [defendant] had no intention of performing them." *Id.* at 1178.

Nodus Bank concedes that its fraud claim is based on promises of future performance, but it argues that its allegations fall within the exception applicable where a promise of future performance is made without the intent to perform. (ECF No. 23 at 14.) Nodus Bank provides no citations to the complaint showing that it alleged that Arocha did not intend to fulfill his promises to repay the Note when he bargained for more time to make payments. Instead, Nodus Bank argues in its response brief that construing the allegations in Nodus Bank's favor, "the Complaint adequately demonstrates that . . . Arocha never harbored an intention of making any of the future principal and interest payments he had promised . . . ." (ECF No. 23 at 15.) But that reasoning is not sound, even though the Court has construed the allegations in Nodus Bank's favor throughout this Order. Nodus Bank is asking the Court to construe its allegation that Arocha never performed into an allegation that Arocha never

*intended to perform*. That is a bridge too far. If the Court were to find an intention not to perform each time a complaint alleged nonperformance, the exception would swallow the general rule requiring an affirmative allegation of intent not to perform would be meaningless.

Finally, the Court cannot credit Nodus Bank's argument that Arocha procured the Modification Agreement through fraud. Nodus Bank has failed to put the Court in a position to evaluate the Modification Agreement, which was submitted in Spanish without an English translation. This violates the rule that "[a]ny foreign language document offered by a party in a proceeding shall be accompanied by an English language translation and a certification signed by the translator that must be printed legibly or typed." *Quintero v. U.S. Attorney General*, 288 F. App'x 586, 590 (11th Cir. 2008) (citation omitted). Thus, to the extent Nodus Bank claims that the Modification Agreement was the result of fraudulent inducement, that portion of the fraud claim must be dismissed as the Court cannot evaluate the Spanish-language Modification Agreement and the allegations characterizing that agreement are not a valid substitute for a translation of it. *See Alvarez v. Nunez*, No. 10-21194-CIV, 2013 WL 1192302, at *2 (S.D. Fla. Mar. 22, 2013) (Hoeveler, J.) (disregarding allegations characterizing, and striking, a "document [that] is in Spanish, without an English translation").

### 4. Conclusion

The Court finds that Count I, for breach of the Note, is adequately stated. The Court finds that Count III, for fraud, is due to be dismissed. Finally, the Court notes that the Defendants have either abandoned or failed to make any cogent arguments for dismissal of Count II (money lent), Count IV (fraudulent transfer), Count V (foreclosure on security interest), or Count VI (unjust enrichment). To the extent the Defendants' sought dismissal of Counts II, IV, V, or VI on the basis that Nodus Bank lacked standing to enforce the Note or related loan documents, the Court has found that Nodus Bank did have the requisite standing in its analysis of Count I. Accordingly, the Court **grants in part** the motion to dismiss and dismisses Count III, for fraud, and **denies in part** the motion to dismiss with respect to all other counts (**ECF No. 20**).

**Done and ordered**, at Miami, Florida, on January 5, 2021.

_____
Robert N. Scola, Jr.
United States District Judge